# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7694 | **DATE** | 8/20/2002 |
| **CASE TITLE** | Jon Arnold, et al. vs. Goldstar Financial Systems, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/16/2002 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss or to compel arbitration [9-1] is granted in part and denied in part. A status hearing is set for 9:30 a.m. on September 16, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | AUG 2 2 2002 |
| ✓ | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | AUG 2 2 2002 |
| | Copy to judge/magistrate judge. | date mailed notice |
| | courtroom deputy's initials | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number

20

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JON ARNOLD, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 7694 |
| v. | ) | |
| | ) | |
| GOLDSTAR FINANCIAL SYSTEMS, INC., | ) | |
| et al.., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION & ORDER

In this putative class action, plaintiffs allege that defendants violated various state and federal laws in the course of offering and providing them with credit repair services. Defendants have moved for dismissal on jurisdictional grounds and for an order compelling arbitration. As explained below, the request for dismissal is granted in part and denied in part, and the request for an order compelling arbitration is denied.



DOCKETED

AUG 2 2 2002

## I. Background

In their first amended complaint, plaintiffs Jon Arnold, Cary Sorbo, and Julian Dorsey, on behalf of themselves and similarly situated individuals, allege that Goldstar Financial Systems, Inc. ("Goldstar"), doing business as Gibson Trust, Inc. ("Gibson"), and The Law Office of Dashia Trowers, along with a putative defendant class of similarly situated attorneys, engaged in fraudulent, unfair, and deceptive practices in promising to manage consumer debt, improve plaintiffs' credit, and prevent creditor harassment. In either late 1999 or early 2000, each plaintiff entered into a credit repair services contract with Goldstar, which was estimated to last between four and five years. The basic notion was that Goldstar would work with each

plaintiffs' creditors to consolidate and reduce payments, would make the payments each month, and would generally serve as a buffer between plaintiffs and their creditors. According to plaintiffs, Goldstar violated both state and federal laws and generally failed to live up to its promises and representations. Plaintiffs' complaint consists of three counts: (1) violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*; (2) illegality of contract; and (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* The first two counts are brought by all plaintiffs against all defendants; the third is brought by Arnold and Sorbo, individually, against Goldstar alone. Defendants move to dismiss the complaint for lack of personal and subject matter jurisdiction. In the alternative, defendants seek an order compelling arbitration.

## II. Analysis

### A. Personal Jurisdiction

Once personal jurisdiction is contested, a plaintiff has the burden of providing sufficient evidence to establish a prima facie case of personal jurisdiction. "The allegations in the complaint are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in his favor." *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). A motion to dismiss for lack of personal jurisdiction should be denied if the plaintiff alleges sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction of the court. *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

1. *Illinois Law*

In cases involving a federal question, a plaintiff must show that the defendant is amenable to service in the forum state and that exercising jurisdiction over the person of the defendant would not offend constitutional standards of due process. *Cent. States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). Because no special rule or statute applies here, service is effective to establish jurisdiction over a defendant only if that defendant would be subject to the jurisdiction of an Illinois state court. Fed. R. Civ. P. 4(k). The Illinois long-arm statute provides for jurisdiction on any basis permitted by the Illinois and federal constitutions. 735 ILCS 5/2-209(c). Under the Illinois constitution, "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990). Of particular relevance here, the Illinois Supreme Court has held that where an individual defendant's conduct in Illinois "was a product of, and was motivated by, his employment situation and not his personal interests, . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Id.* at 1318.

Defendant Trowers swears that Goldstar management made all decisions for transactions with its clients, that prior to this lawsuit she was not aware that any of the named plaintiffs were clients of Goldstar, that she had no agreement to provide any services to them, that she does not remember performing any services for them, and that she signed contracts on Goldstar's behalf only as an employee of Goldstar and not in any other capacity. (Defs.' Mem. Supp. Mot. Dismiss Ex. B.) Plaintiffs argue in response that the evidence contradicts Trowers's averments that she

3

had no communications with the plaintiffs and performed no services on their behalf. In support

of this argument, plaintiffs cite three documents: (1) a letter sent to plaintiff Dorsey printed on

letterhead listing both Goldstar and "The Law Office of Dashia N. Trowers"; (2) a statement in

the client information sheet advising that late payments would render "ATTORNEY'S agent or

subcontractor" unable to make timely disbursements to creditors; and (3) a reference on

Goldstar's website boasting of its "full legal staff." (Pls.' Resp. at 5.) The second and third

documents make no reference to Trowers. While the joint letterhead does tend to refute

Trowers's claim that her law offices had no connection to Goldstar, the letterhead sheds no light

on the capacity in which Trowers and her law offices acted. Her averments that Goldstar's

management made all the decisions concerning client transactions and that she acted only in her

capacity as an employee of Goldstar stand unrebutted and bring her within the fiduciary shield

doctrine endorsed by the Illinois Supreme Court. Because her only contacts with Illinois

apparently derived from, and were motivated by, her employment status, the Illinois constitution

prohibits the exercise of personal jurisdiction over her and her law firm.[1] All claims against

Trowers's law offices are therefore dismissed.

With respect to Goldstar, the case law applying the Illinois constitution provides less

clear guidance, but tends to point in the other direction, at least with respect to plaintiffs Arnold

---

[1]For similar reasons, exercising personal jurisdiction over Trowers might also violate federal due process. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 n.22 (1985) ("[W]hen commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party, at least where he is a 'primary [participant]' in the enterprise and has acted purposefully in directing those activities.") (citations omitted).

and Sorbo.[2] Neither of the two cases cited by defendants on the personal jurisdiction question applies the Illinois constitutional standard. *Khan v. Van Remmen, Inc.*, 756 N.E.2d 902 (Ill. App. Ct. 2001); *MJC-A World of Quality, Inc. v. Wishpets Co.*, No. 00 C 6803, 2001 U.S. Dist. LEXIS 13178 (N.D. Ill. Aug. 22, 2001). Nor does this court's independent research reveal especially helpful case law. To the extent the Illinois case law is applicable, it suggests that these two plaintiffs clear the state constitutional hurdle. Plaintiffs allege (and defendants do not dispute) that each entered into a long-term contractual relationship with Goldstar, ranging in estimated duration between four and five years. Goldstar telephoned Arnold and Sorbo in Illinois and entered into ongoing commercial relationships that would continue for years to have substantial impacts on the interests of Illinois residents. *See Alderson v. Southern Co.*, 747 N.E.2d 926, 948 (Ill. App. Ct. 2001) (holding that it was "fair, just, and reasonable" under the Illinois due process clause to exercise personal jurisdiction over defendants whose economic activities had "a substantial effect upon interests located in Illinois"); *cf. Viktron L.P. v. Program Data, Inc.*, 759 N.E.2d 186, 195 (Ill. App. Ct. 2001) ("Where there is an ongoing commercial relationship, each party will typically have a substantial jurisdictional claim at home against the other.") (internal quotation marks and citation omitted). This type of activity is apparently sufficient to ground personal jurisdiction under Illinois law.

---

[2]Dorsey, who has Illinois debts but is not an Illinois resident, presents a more difficult case. *See infra.* Because plaintiffs clearly fail to make out a prima facie case under the federal due process clause for personal jurisdiction over Goldstar with respect to Dorsey's claim, the court expresses no opinion as to the Illinois constitutional question and rests its holding with respect to Dorsey's claim on federal grounds instead.

2. *Federal Due Process Clause*

The existence of personal jurisdiction over Goldstar therefore turns on the strictures imposed by the federal due process clause. Due process requires that a nonresident defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The touchstone is foreseeablility, whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Only purposeful acts count, and a defendant may not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted).

> Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475-76 (citations omitted). Once it has been decided that a defendant purposefully established minimum contacts within the forum State, the reasonableness of asserting personal jurisdiction may be evaluated in light of "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of

controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). These factors can either lower the level of minimum contacts required or, if the defendant puts forward a compelling case, render the exercise of personal jurisdiction unreasonable. *Id.* at 477-78.

Personal jurisdiction may be either "general" or "specific." Since plaintiffs here do not claim that Goldstar had "continuous and systematic general business contacts" with Illinois,[3] each plaintiff must show that his or her claim arises out of or is related to Goldstar's contacts with Illinois, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984), and that those contacts were not "random," "fortuitous," or "attenuated." *Burger King*, 471 U.S. at 475. Each plaintiff has his or her own claims against Goldstar. The personal jurisdiction analysis therefore must be plaintiff-specific. *Cf. Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) ("Questions of specific jurisdiction are always tied to the particular claims asserted."). But since the three claims asserted by any particular plaintiff rest on a common set of operative facts, there is no need to examine the three claims separately.

a. Dorsey

Plaintiffs fail to establish sufficient contacts between Goldstar and Illinois with respect to plaintiff Dorsey. The complaint alleges that Dorsey is a resident of Pennsylvania and signed an agreement with Goldstar in or about May 2000. Plaintiffs attach to their response brief a letter dated June 1, 2000 from Goldstar to Dorsey at a Pennsylvania address. The inference that

---

[3]Although plaintiffs point to Goldstar's maintenance of an interactive website, they do not assert that Goldstar actually did business through the website with anyone other than plaintiffs.

Dorsey was never an Illinois resident at any time relevant to her claim against Goldstar is bolstered by plaintiffs' argument that Goldstar "purposefully directed its activities to Illinois residents such as Plaintiffs Arnold and Sorbo" (Pls.' Resp. at 4), and by the omission of Dorsey from Count III, which is premised on Illinois law. The only relevant connection to Illinois is apparently Goldstar's alleged failure to make payments on behalf of Dorsey to an Illinois creditor, Loyola College. This lone contact with Illinois is far too fortuitous and attenuated to support the exercise of personal jurisdiction over Goldstar with respect to Dorsey's claims. Dorsey's claims against Goldstar are dismissed.

b. Sorbo

The plaintiff with the next strongest case for personal jurisdiction is Sorbo. Sorbo alleges that she is an Illinois resident. It is unclear whether she was in Illinois at all relevant times, but it is reasonable to draw such an inference. In their response brief, plaintiffs describe Sorbo as an Illinois resident and nothing in the record suggests a change in her place of residence. Sorbo alleges that, prior to signing her client agreement in November 1999, a Goldstar "specialist," Roby Dudley, made various representations and promises to her, encouraging her to sign up for services from Goldstar. The president of Goldstar, Patrick O'Toole, avers that all communications with the plaintiffs were initiated in Florida, so Dudley must have placed the call to Sorbo. After this communication, Goldstar faxed Sorbo a contract which included her address. Under the contract, Goldstar was to pay her creditors from funds automatically withdrawn from her checking account on a monthly basis for an estimated period of 51 months. To summarize, Sorbo has alleged sufficient facts to infer that Goldstar called her at least once in

Illinois, sent her a fax in Illinois, and entered into a long-term contractual relationship with an Illinois resident obligating itself to withdraw funds monthly from an Illinois checking account.

On the other hand, O'Toole avers that the company has no offices in Illinois, has never had any personnel in Illinois, and has never solicited business in Illinois. He further declares that the contracts "were completed in Florida" and that the place of performance is in Florida. (Defs.' Mem. Ex. A.) Physical absence, standing alone, is not decisive. "Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476; *accord Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1219 n.3 (7th Cir. 1990). Nor is the location of contract formation or performance dispositive. *Burger King*, 471 U.S. at 478 ("The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, or on 'conceptualistic . . . theories of the place of contracting or of performance.'") (citations omitted). However O'Toole may define "place of performance" in his affidavit, he does not dispute Sorbo's allegation that the agreement called for monthly withdrawals by Goldstar from her checking account.

O'Toole does not dispute the existence or the content of the alleged pre-agreement conversation between Sorbo and Dudley and does not suggest that Sorbo has ever left Illinois. A business phone call made to a person in Illinois obviously counts as solicitation in Illinois. *See Lung v. Yachts Int'l, Ltd.*, 980 F. Supp. 1362, 1368 (D. Haw. 1997) (holding that telephone calls to the forum qualify as active solicitation). It is therefore difficult to reconcile O'Toole's

statement that Goldstar never solicited business in Illinois with his statement that any communication with the plaintiffs was initiated in Florida. Perhaps O'Toole is operating under the false premise that solicitation in a state requires a physical presence therein. Resolving this tension in favor of Sorbo, as the court must, Goldstar's agent initiated contact with Sorbo in Illinois in a successful attempt to procure a contractual relationship with an Illinois resident that would span over four years and that would obligate Goldstar to make monthly withdrawals from an Illinois checking account.

Goldstar could reasonably anticipate being haled into an Illinois court on the basis of these contacts. Active solicitation of a forum resident resulting in a single agreement is sufficient to support personal jurisdiction under the federal due process clause. *Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1202-03 (7th Cir. 1990). More important, Goldstar knowingly undertook "continuing obligations" to an Illinois resident. *Burger King*, 471 U.S. at 476. The case at bar closely resembles *Daniel J. Hartwig*, in which the Seventh Circuit held that "[b]ecause [defendant] knowingly reached out to a Wisconsin business and created a continuing relationship with that business[, which lasted four years], we cannot say that [defendant]'s contacts with Wisconsin were 'random, fortuitous or attenuated.'" 913 F.2d at 1219. That at least one monthly Illinois act was contemplated by the agreement bolsters the court's conclusion that Sorbo has made out a prima facie showing of sufficient purposeful minimum contacts between Goldstar and Illinois. *See id.* at 1219 ("Although not dispositive, the fact that a plaintiff performs a substantial amount of a contract in the forum state constitutes another meaningful contact between the defendant and the forum.").

10

c. Arnold

Plaintiff Jon Arnold's factual allegations are more detailed than those of the other plaintiffs. He is an Illinois resident. As with Sorbo, there is no reason to think that any of Goldstar's contacts with Arnold took place while Arnold was in another state. Around October 1999, Arnold responded to Internet advertising by visiting Goldstar's website. On the website, he apparently submitted personal information for analysis by Goldstar. Roby Dudley, the same Goldstar agent who later contacted Sorbo, followed up with a phone call to Arnold, encouraging him to sign up for services with Goldstar. On October 4, 1999, Arnold received an email from Goldstar which included instructions for activating an account and a draft contract. After signing and returning the contract, estimated to last 57 months, Arnold made his scheduled November payment through the website. In the next few months, Goldstar sent Arnold at least one letter and several billing statements. Jim Faust, a representative of Goldstar's, called Arnold once to discuss issues relating to Arnold's contract.

Goldstar's alleged contacts with Arnold in Illinois easily clear the minimum level required by the federal due process clause to support personal jurisdiction in this forum. Goldstar purposefully established a contractual relationship with an Illinois resident which was expected to last nearly five years. Although it does not appear that Goldstar agreed to perform any services in Illinois, there is no question that the company created "continuing obligations" between itself and Arnold, an Illinois resident. *Burger King*, 471 U.S. at 476. Goldstar repeatedly directed its activities at Illinois, telephoning Arnold twice, sending him statements on a monthly basis, and emailing him at least once. Goldstar's website bolsters a finding of sufficient minimum contacts in two ways. First, by inviting visitors to submit personal

11

information in the hope of later commercial gain, the website was "interactive" enough to constitute "active solicitation" in Illinois.[4] *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1124-25 (W.D. Pa. 1997) (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996)). As observed above, active solicitation in a forum leading to a contract with an in-forum resident is sufficient grounds for personal jurisdiction. *Madison Consulting*, 752 F.2d at 1202-03. Second, Arnold's submission of a monthly payment through the website suggests that Goldstar was actually transacting business over the Internet, not merely exchanging information. *Zippo*, 952 F. Supp. at 1123-25 (citing *Compuserve, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)). This is roughly analogous to Goldstar setting up a 24-hour storefront in Illinois for Arnold's use.

Goldstar does not expressly argue, let alone put forward a compelling case, that subjecting it to the personal jurisdiction of a court in Illinois would be unreasonable in light of other constitutionally relevant factors. *See World-Wide Volkswagen*, 444 U.S. at 292. The only hint of such an argument is O'Toole's averment that, with the exception of the plaintiffs and any records in their possession, all relevant documents and witnesses are in Florida. There is no indication as to the number of such witnesses or documents. Goldstar fails to show that trying this case in Illinois would be unduly burdensome for it or that transporting witnesses and documents to Illinois would substantially hinder judicial efficiency. Even if most of the evidence is in Florida, Illinois has a strong countervailing interest in protecting its residents' rights under

---

[4]Although Goldstar objects to the printed web pages attached by plaintiffs to their response brief, Goldstar does not dispute Arnold's allegation that he submitted personal information and made a monthly payment via the website. Even ignoring the printed pages, the website was interactive on the undisputed allegations of fact.

state and federal law and plaintiffs have an interest in obtaining convenient and effective relief. On this record, it does not appear that forcing Goldstar to litigate this matter in Illinois would impose a constitutionally intolerable burden.

## B. Subject Matter Jurisdiction

Defendants argue that this court lacks subject matter jurisdiction. Plaintiffs' only federal cause of action arises under the CROA, which does not apply to non-profit organizations. 15 U.S.C. § 1679a(3)(B)(i). O'Toole avers that Gibson Trust, Inc., Goldstar's successor-in-interest, is a non-profit corporation. As plaintiffs observe in response, however, their contracts were with Goldstar, which was not a non-profit organization. Plaintiffs also assert that they were not informed about the transfer of their accounts to Gibson Trust until well after the alleged wrongdoing took place. In their reply brief, defendants do not dispute any of these assertions. Obtaining non-profit status after the fact cannot protect an entity from liability for its previous misdeeds. This court therefore has subject matter jurisdiction.[5]

## C. Arbitration Clause

Defendants, citing § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, ask this court for an order compelling "binding arbitration in accordance with the terms of the agreements at issue" (Mem. at 4.) Defendants assert that each of plaintiffs' contracts included

---

[5]After quoting a choice-of-law provision in the contracts, defendants assert in a single sentence that "[t]he pendant state law claims fail because Florida law governs the agreement." (Mem. at 3.) Counts II and III allege claims under Illinois law, but defendants fail to establish that facts consistent with the complaint could not give rise to recovery under Florida law. What amounts to a Rule 12(b)(6) motion by defendants is therefore denied.

the following provision:

> Any dispute between us that cannot be amicably resolved; [sic] as
> to all claims or controversies arising out of this Agreement, shall
> be settled solely and exclusively by binding arbitration in Ft.
> Lauderdale, Florida. Arbitration shall be administered by, and
> under the Commercial Arbitration Rules of the prevailing
> American Arbitration Association. . . . And judgment upon the
> award rendered by the arbitrator(s) may be entered and enforced in
> any court of competent jurisdiction.

(*Id.* at 3.) In a footnote, defendants claim that the agreements are attached as exhibits to the first
amended complaint. (*Id.* at 3 n.4.) In fact, only Arnold's agreement, which does contain the
quoted language, appears in the exhibits. Plaintiffs' first response on the arbitration issue is that
defendants "should be required to prove" that the other two plaintiffs signed agreements
including the quoted language. (Resp. at 8.) However, plaintiffs do not deny the existence of
such agreements. There is no requirement in the Federal Rules of Civil Procedure that parties
attach complete copies of contracts rather than merely quote the relevant language. *Mount
Hawley Ins. Co. v. Guardsmark, Inc.*, No. 01 C 5088, 2001 U.S. Dist. LEXIS 9196, at *3-4 (N.D.
Ill. July 2, 2001). By not disputing defendants' assertion that each plaintiff signed a contract that
included this arbitration language, plaintiffs have conceded the point.

1. *Order or Stay?*

Having established the existence of arbitration agreements providing for arbitration in
Florida, a threshold question (mysteriously ignored by the parties) becomes whether this court
has the power to grant defendants' request by entering an order compelling arbitration "in
accordance with the terms of the agreements at issue." (Mem. at 4.) It does not. Where an
arbitration agreement contains a forum selection clause and the parties have not waived reliance

on that clause, only a court in the selected forum can issue a § 4 order compelling arbitration. *Snyder v. Smith*, 736 F.2d 409, 418-20 & n.8 (7th Cir. 1984). Defendants quote the forum selection clause and seek an order compelling arbitration in accordance with the agreement, so there is no waiver. If anyone has waived the issue, it is plaintiffs; they have not requested, even in the alternative, that arbitration should take place in the Northern District of Illinois.

The question then is how to respond to defendants' request for relief that is outside of the power of this court to grant. At first blush, it is tempting simply to deny defendants' motion for this reason.[6] If plaintiffs had raised the objection instead of briefing the question of arbitrability, then denying the motion may have been the appropriate course of action. But plaintiffs argued the merits of the arbitration issue instead and now the question is fully briefed. Both parties are apparently content to have this court decide whether arbitration in Florida is appropriate. This court hesitantly accepts the invitation by interpreting defendants' misguided motion for a § 4 order compelling arbitration as seeking the only relief actually available under the FAA from this court, a § 3 stay pending arbitration. Requiring the parties to re-brief the issue of arbitrability in another court would be a waste of judicial and attorney resources. *Cf.* Fed. R. Civ. P. 1 (stating that Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"). Defendant obviously seeks a judicial ruling that this matter must be arbitrated; the distinction between an order and a stay is more a

---

[6]If defendants had initiated this lawsuit seeking an order compelling arbitration in Florida, then dismissal would be the appropriate remedy. *Snyder*, 736 F.2d at 420 ("In a case . . . where the petition to compel arbitration [is] the only relief sought, the district court should dismiss the petition or, upon motion, stay its proceedings."); *see also Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995). Not so here—plaintiffs are presumptively entitled to their choice of judicial forum.

matter of form than substance. An expeditious ruling is especially appropriate in the arbitration context. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983) ("The [FAA] calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses."). Finally, there is no indication that any overlapping litigation is currently pending elsewhere, so there is no risk of duplicative effort or inconsistent judgments. *Cf. Roe v. Gray*, 165 F. Supp. 2d 1164, 1174 (D. Colo. 2001) (declining to rule on the question of arbitrability in the course of determining whether a § 3 stay was appropriate in deference to simultaneously pending proceedings).

2. *Illegality*

Plaintiffs seek to avoid arbitration on the ground that the underlying contract is illegal. As a matter of federal law, this argument is a non-starter: the illegality of a contract containing an arbitration clause does not infect the clause itself. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993). This explains why the only case law plaintiffs muster in support of their contrary position comes from state courts. *Ala. Catalog Sales v. Harris*, 794 So. 2d 312, 314 (Ala. 2000); *FastFunding The Co., Inc. v. Betts*, 758 So. 2d 1143, 1144 (Fla. Dist. Ct. App. 2000). This court is bound by the Seventh Circuit's interpretation of federal law and nothing connects the case at bar to Alabama, so precedent from that jurisdiction is not helpful to plaintiffs' cause.

Although the parties apparently fail to realize it, plaintiffs' reliance on *FastFunding* is more intriguing. According to defendants, the contracts provide that all questions concerning them are to be governed by Florida law. Perhaps plaintiffs, by citing a Florida case, mean to

suggest that this general choice-of-law provision indicates that the parties opted for Florida rather than federal law to control the issue of arbitrability. It certainly would have been within the power of the parties to reach such an agreement. *See Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 474-79 (1989) (declining to overturn a California court's conclusion that a general choice-of-law provision covered the issue of arbitrability). The question is whether they did so in this case, which is itself a question of contract interpretation governed by Florida law.

The only case this court has found considering the question under Florida law holds that a general choice-of-law provision does not displace federal law on the issue of arbitrability. *Paul Davis Sys., Inc. v. Paul W. Davis Sys., Inc.*, No. 98 C 2027, 1998 U.S. Dist. LEXIS 16912, at *7 (N.D. Ill. Oct. 15, 1998). Applying Illinois and New York law, the United States Supreme Court has reached the same conclusion. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 n.4 (1995); *id.* at 71-72 (Thomas, J., dissenting). This court believes that Florida courts would follow suit. The normal purpose of general choice-of-law clauses "is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law." *Volt Info.*, 489 U.S. at 488 (Brennan, J., dissenting). Moreover, because "the laws of the State of Florida" include federal laws under settled principles of supremacy, the literal language of the contract gives no indication of any intent to exclude application of the Federal Arbitration Act. *Id.* at 490-91. Finally, Florida courts, like federal courts, read contractual ambiguity in favor of arbitration. *Paul Davis*, 1998 U.S. Dist. LEXIS 16912, at *7 (citing *Ronbeck Constr. Co. v. Savanna Club Corp.*, 592 So. 2d 344, 346 (Fla. App. 1992)). At most, the choice-of-law provision creates some uncertainty as to which body of law governs arbitrability; uncertainty must be resolved in favor of arbitration.

Thus, this court holds that the arbitration provisions in the present contracts are governed by federal, not Florida, law and that plaintiffs' reliance on *FastFunding* is therefore misplaced. *See Buckeye Check Cashing, Inc. v. Cardegna*, No. 4D01-3549, 2002 Fla. App. LEXIS 10336, at *3-4 (Fla. Dist. Ct. App. July 24, 2002) (distinguishing *FastFunding* where the contract provided that federal law would govern arbitrability).

3. *Class Action Prohibition*

Plaintiffs' next argument is based on the contractual provision prohibiting plaintiffs' participation in any class action. This prohibition renders the arbitration clause unenforceable because, according to plaintiffs, it constitutes an impermissible waiver of a "protection provided by" or a "right of the consumer under" the CROA. 15 U.S.C. § 1679f(a). Plaintiffs cite no case law in support of this theory. This court's own research has failed to reveal any judicial decision directly addressing the question of whether the CROA renders void an arbitration clause that prohibits class actions. Nonetheless, it is clear that plaintiffs' argument fails. The burden of showing that Congress intended to preclude arbitration for a statutory claim rests with the party who seeks to avoid arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute]'s underlying purposes." *Id.* Any doubts as to Congress's intent are to be resolved in favor of arbitration. *Id.*

Plaintiffs here rely solely on the statutory text. As a general matter, the right to bring a class action in federal court is a procedural right created by Rule 23 of the Federal Rules of Civil Procedure. The only references to class actions in the CROA concern the calculation of punitive damages. 15 U.S.C. §§ 1679g(a)(2)(B), (b)(4). These provisions do not create a substantive

18

right to bring a class action, so agreeing in an arbitration clause to forego the class action mechanism does not amount to a waiver of a protection provided by or statutory right under the CROA. *Cf. Johnson v. W. Suburban Bank*, 225 F.3d 366, 371 (3d Cir. 2000) (reaching the same result with respect to a Truth-in-Lending Act ("TILA") claim); *Lopez v. Plaza Fin. Co.*, 1996 U.S. Dist. LEXIS 5566, No. 95-C-7567, 1996 U.S. Dist. LEXIS 5566, at *7 (N.D. Ill. Apr. 25, 1996) ("Congress has not created a statutory right to bring class actions under [the] TILA").

4. *Prohibitive Expenses*

Plaintiffs' final argument against arbitration is their strongest. The United States Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). "[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. Plaintiffs attempt to meet this burden. Arbitration, plaintiffs' claim, would proceed under the American Arbitration Association's Commercial Dispute Resolution Procedures and would cost in excess of $4000 per plaintiff, not including the costs of renting a room, traveling to Florida, or reimbursing the arbitrator for time spent on pre-hearing matters. Plaintiffs point out that the arbitration agreements do not provide for the splitting of costs between the parties. Plaintiffs reason that "common sense" suggests that such expenses would be prohibitive for consumers, like them, who sought credit repair services precisely because they were in debt. (Resp. at 13.)

Defendants make only two points in reply. First, citing *Green Tree,* they argue that because the agreements are silent as to who will bear the costs of arbitration, plaintiffs have failed to show that they will be required to do so. Second, defendants assert that plaintiffs will not need to travel to Florida given the technology available for video and voice communication. Plaintiffs have stated that they want to testify in person as to the oral promises and affirmations of fact underlying their claims. This does not seem like an unreasonable decision. Defendants offer no explanation as to why they should be able to dictate the method by which plaintiffs' evidence is presented. But even setting aside reasonable travel expenses, plaintiffs have shown a real likelihood that they will not be able to afford to arbitrate their claims.

The starting point, as both sides recognize, is *Green Tree.* There, the Court found that "[t]he record reveals only the arbitration agreement's silence on the subject [of whether claimaint would bear the costs], and that fact alone is plainly insufficient to render it enforceable." *Id.* at 91. The Court specifically declined to reach the question of how detailed the initial showing of prohibitive expense would need to be before the burden of production shifted to the proponent of arbitration because "in this case neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point." *Id.* at 92. *Green Tree* is easily distinguishable from the case at bar.

Even at this relatively early stage of litigation, plaintiffs here have done much more than merely point to the absence of contractual language concerning arbitration costs. Although plaintiffs do not state exactly what portion of the $4000 estimate (unchallenged by defendants) they are likely to bear, the figure is easily calculable. Plaintiffs state that the filing fee will be $750 each, as compared with the single $150 fee for filing in federal court. This initial fee

apparently will be born entirely by plaintiffs. Defendants do not object to plaintiffs' reliance on

either a two-days-per-plaintiff hearing duration or a $1800-per-day arbitrator's fee, so the court

accepts as an accurate estimate $3600 per plaintiff in arbitrator's fees. According to a recent case

cited by plaintiffs, "[t]he AAA's Commercial Rules provide that the arbitrator's fees . . . , travel

expenses, rental of a hearing room, and other costs are borne equally by the parties, absent some

agreement between the parties . . . or a different division made at the discretion of the arbitrator."

*Phillips v. Assocs. Home Equity Servs.*, 179 F. Supp. 2d 840, 846 (N.D. Ill. 2001). Hence, even

excluding one half of travel expenses (or video conferencing costs) and rental fees, it is

uncontested that arbitration presumptively will cost each plaintiff $2550 (the $750 filing fee plus

half of the $3600 arbitrator's fee). This is seventeen times the cost of proceeding in district

court. Although one might have preferred affidavits from plaintiffs stating that this amount was

prohibitive, defendants do not take issue with the view that individuals, like plaintiffs, with debt

problems are unable to afford such costs. *Cf. Giordano v. Pep Boys--Manny, Moe & Jack, Inc.*,

No. 99-1281, 2001 U.S. Dist. LEXIS 5433, at *24 (E.D. Pa. Mar. 29, 2001) ("[N]othing in *Green

Tree* requires courts to undertake detailed analyses of the household budgets of low-level

employees to conclude that arbitration costs in the thousands of dollars deter the vindication of

employees' claims in arbitral fora."). Unlike *Green Tree*, this case squarely presents the question

of whether a party resisting arbitration has made an adequate showing of prohibitive expenses.

Although plaintiffs' showing on this point is less than overwhelming, this court believes that it

suffices to shift the burden to defendants, who offer in reply only *Green Tree* and a vague

promise of cost-saving technology.

### III. Conclusion

This court has subject matter jurisdiction. Because personal jurisdiction over the Law Offices of Dashia Trowers is lacking, however, the claims against that entity (and the putative defendant class represented thereby) are dismissed. So too Dorsey's claims against Goldstar are dismissed for lack of personal jurisdiction. On the other hand, this court finds that Arnold and Sorbo have made out prima facie cases of personal jurisdiction with respect to Goldstar, so the court denies defendants' motion to dismiss the claims of those two plaintiffs against Goldstar. Finally, the court construes defendants' motion to compel arbitration as a motion to stay proceedings pending arbitration and denies the motion because plaintiffs have shown a genuine likelihood that they would incur prohibitive costs in arbitration.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATE: August 20, 2002

22